RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

S.L., a minor, by and through his guardian and next friend K.L.; K.L., individually and on behalf of all others similarly situated,

    *Plaintiffs-Appellants,*

RICHARD ROE, et al.,

    *Plaintiffs,*

    *v.*

PIERCE TOWNSHIP BOARD OF TRUSTEES, et al.,

    *Defendants,*

THOMAS G. DELGRANDE; EDWARD S. BARTLEY, aka Shawn Bartley, aka E. Shawn Bartley, individually and on behalf of all others similarly situated,

    *Defendants-Appellees.*

No. 13-3892

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:07-cv-00986—Timothy S. Black, District Judge.

Argued: July 30, 2014

Decided and Filed: November 17, 2014

Before: SILER, BATCHELDER, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Amelia, Ohio, for Appellants. Frank H. Scialdone, MAZANEC, RASKIN & RYDER CO., L.P.A., Cleveland, Ohio, for Appellees. **ON BRIEF:** Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Amelia, Ohio, for Appellants. Frank H. Scialdone, MAZANEC, RASKIN & RYDER CO., L.P.A., Cleveland, Ohio, for Appellees.

1

―――――――――

**OPINION**

―――――――――

ALICE M. BATCHELDER, Circuit Judge.  S.L., a minor, by and through his guardian K.L., and K.L. individually ("Appellants"), appeal the district court's summary judgment orders for Defendants-Appellees Edward ("Shawn") Bartley and Thomas DelGrande.  We AFFIRM.

**I.**

On December 4, 2006, Pierce Township Police Officer David Homer responded to a call made by S.L.'s mother.  Homer "smelled smoke" upon entering S.L.'s house and S.L.'s mother reiterated that her teenage son had been setting fires in the house after an argument between the two had escalated.  She said that she had found smoldering Popsicle sticks in her son's bedroom, which she thought may have been her son's attempt to cast a "black magic" spell.  Homer then entered S.L.'s bedroom.  Although the Popsicle sticks were not visible, S.L. allegedly admitted that he had "set some popsicle sticks on fire and they went out after I left the room."  When asked by Homer whether he was afraid that the house might catch fire, S.L. responded, "I really don't care.  I don't want to be here."  Homer then arrested S.L. for aggravated arson and transported him to the Clermont County Juvenile Detention Center ("Detention Center").  Thomas G. DelGrande was the superintendent of the Detention Center.

Upon arriving at the Detention Center, Homer prepared a complaint charging S.L. as a delinquent child based on the felony charge of aggravated arson, and turned over custody of S.L. to Detention Center "Youth Leader" Shawn Bartley.  Clermont County Juvenile Court Judge Stephanie A. Wyler had appointed Bartley as "Youth Leader" and deputy clerk.  The appointment as clerk authorized Bartley to sign a complaint, and Bartley did sign the complaint prepared by Homer, attesting that Homer had taken an oath in his presence as required by Ohio Rule of Juvenile Procedure 10(B)(3).  Bartley, however, never administered the oath to Homer.

S.L. appeared before Judge Wyler fewer than twelve hours later.  At this hearing, Judge Wyler appointed a guardian ad litem, set a date for the pre-trial hearing, and ordered the

continued detention of S.L. pending a psychological evaluation.  S.L. was released on December 11, 2006, and his aggravated arson charge was later dismissed.

The Appellants sued Homer, Bartley, DelGrande, Chief of Police James T. Smith, and Pierce Township Board of Trustees in the United States District Court for the Southern District of Ohio.  The claims against Homer included a 42 U.S.C. § 1983 action premised on a violation of S.L.'s Fourth Amendment rights, and state-law claims for false arrest, false imprisonment, malicious prosecution, and loss of filial consortium.  The district court characterized the "ultimate issue for . . . these claims" as "[w]hether Homer had probable cause to arrest S.L. for aggravated arson."  The district court denied the Appellants' motion for partial summary judgment against Homer, holding that a genuine dispute of material fact existed on whether S.L. told Homer that he set the Popsicle sticks on fire, and thus whether there was probable cause to arrest S.L.

The Appellants also filed a motion for partial summary judgment against Bartley, alleging that Bartley, under § 1983, violated S.L.'s Fourth Amendment rights and falsely arrested and imprisoned him.  After noting that the Appellants' § 1983 claim depended on whether Bartley "had a duty to make an independent assessment of probable cause for S.L.'s arrest and detention," the court denied the Appellants' motion, finding "[a]fter an exhaustive search, . . . no duty for a detention clerk to make an independent assessment of probable cause before an arrestee may be detained."  The court also denied the Appellants' motion on their false arrest claim because a genuine dispute of material fact existed as to whether Bartley had the legal authority to administer oaths and whether, if he did not, the absence of legal authority made S.L.'s detention unlawful.

Pierce Township Board of Trustees, Smith, and Homer ("Township Defendants") filed their own joint motion for summary judgment on five claims: the § 1983 action premised on a violation of S.L.'s Fourth Amendment rights, the false-arrest and malicious prosecution claims against Homer, the negligent-supervision claim against Smith, and the loss of filial consortium claim against both Smith and Homer.  On the § 1983 claim against the Township Defendants, the district court "when viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party" was "forced to conclude that Judge Wyler did not make a probable-cause

determination," which would have precluded relitigation of the probable-cause issue. The court then denied summary judgment for the Township Defendants on the Appellants' § 1983 claim, holding that given the fact-intensive nature of the probable-cause inquiry, a genuine dispute of material fact existed on whether Homer had probable cause to arrest S.L. for aggravated arson. The court did grant the Township Defendants' motion on the Appellants' § 1983 official-capacity claim against Smith, holding that insufficient evidence existed that police department training was inadequate or that Smith knew of prior unconstitutional actions and failed to respond. Next, the court denied the Township Defendants' motion for summary judgment on the Appellants' § 1983 individual-capacity claim against Homer, primarily because "summary judgment based on a qualified immunity defense is inappropriate in a § 1983 action" where a genuine dispute of material fact exists "on which the question of immunity turns." The factual dispute identified by the court was whether Homer had probable cause to arrest S.L.[1]

Finally, on the Appellants' state-law claims, the district court granted Pierce Township's motion for summary judgment, holding that Pierce Township is immune from suit under Ohio Rev. Code Ann. § 2744.02. Finding that the Appellants "have failed to brief this issue," the district court granted summary judgment to the Township Defendants on Smith's immunity claim, resulting in summary judgment on the Appellants' negligent-supervision claim as well. The district court denied summary judgment on Homer's claim for immunity, however, because "Ohio courts have found that summary judgment on immunity grounds is improper where there is a genuine issue of fact as to whether an officer had probable cause to effectuate an arrest." And, for the same reason, the court denied the Township Defendants' summary judgment motion on the Appellants' false-arrest claim against Homer. The Township Defendants' motion on the Appellants' malicious prosecution claim against Homer similarly was denied because "the existence of probable cause is subject to a genuine dispute," "malice is tied so closely to probable cause," and "[n]either party points to sufficient evidence . . . to allow this Court to determine definitively the eventual disposition of S.L.'s juvenile-court case." The court also

---

[1]The court granted summary judgment to the Township Defendants on the Appellants' § 1983 due process claims, finding that the Appellants "have abandoned any due-process claims." And, for the same reason, the court granted summary judgment to the Township Defendants on the Appellants' § 1983 official policy, practice, and custom claims against Pierce Township.

awarded summary judgment to the Township Defendants on K.L.'s loss of filial consortium claim because S.L. did not suffer a "physical injury" as required by Ohio law.

On the issue of damages, the court denied the Township Defendants' summary judgment motion pertaining to compensatory damages, concluding that S.L.'s deposition testimony identified sufficient evidence of damages. With respect to punitive damages, the court held that Pierce Township was itself immune from punitive damages under both § 1983 and Ohio law. But "[b]ecause a genuine dispute exists as to whether Officer Homer acted with malice," the district court denied the Township Defendants' motion as to punitive damages against Homer. Finally, the court held that the Township Defendants' motion for summary judgment on attorney's fees and costs was "premature."

Bartley filed his own motion for summary judgment on the Appellants' § 1983, false arrest, and loss of filial consortium claims. The court granted the motion on all claims, holding that "Bartley was performing a quasi-judicial function by accepting the complaint against S.L. and by preparing a risk assessment," and thus he was entitled to absolute, quasi-judicial immunity.

DelGrande also filed a motion for summary judgment on the Appellants' official-capacity § 1983 claim, state-law negligent supervision claim, and loss of filial consortium claim. On the official-capacity § 1983 claim for violation of S.L.'s Fourth Amendment rights, the district court held that DelGrande had final policymaking authority over the detention center, that DelGrande "fail[ed] to address the issue of deliberate indifference," and that "based on the Detention Center's policies in place at the time of S.L.'s detention, prior instances of unconstitutional conduct demonstrating a history of abuse can be inferred." The court therefore denied summary judgment on the Appellants' official-capacity § 1983 claim against DelGrande.

DelGrande argued that he was immune from liability under Ohio law on the Appellants' negligent supervision claim, but the district court disagreed, holding that DelGrande could have acted recklessly—and thus outside the scope of immunity under Ohio Rev. Code Ann. § 2744.03(A)(6)—because "where there is evidence that Defendant DelGrande trained Detention Center employees regarding the constitutional rights of juveniles, that evidence is incomplete and subject to doubt—it is subject to genuine dispute." The court also agreed with the

Appellants that sufficient evidence existed that DelGrande failed to train on "constitutional detention issues" like probable cause requirements, which "is enough . . . to overcome Defendant DelGrande's presumption of statutory immunity." On the merits of the Appellants' negligent supervision claim, the court concluded that DelGrande did not "properly move[] for summary judgment on this claim," but even "if he did intend to make such a motion . . . DelGrande's motion for summary judgment is DENIED in this respect." Finally, the court granted DelGrande's motion for summary judgment on K.L.'s claim for loss of filial consortium, concluding that S.L. did not allege a "physical injury."

DelGrande filed a Rule 59(e) motion to reconsider, arguing that the court clearly erred by not "first finding that Officer Bartley's conduct violated S.L.'s constitutional rights." The court denied the motion, holding that DelGrande had forfeited this argument and the court had not clearly erred. DelGrande appealed the district court's denial of statutory immunity under Ohio law. We affirmed. *See S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trs.*, 509 F. App'x 536, 539 (6th Cir. 2013).

The case was transferred to a new district court judge, and DelGrande filed a second motion for reconsideration, reiterating that the district court clearly erred by not first finding that Bartley's conduct violated some constitutional right. This time, the district court granted DelGrande's motion for summary judgment on the Appellants' § 1983 claim.[2] In addition to holding that DelGrande could not be liable because Bartley had not violated S.L.'s constitutional rights, the court sua sponte raised an Eleventh Amendment defense, and also granted DelGrande's motion for summary judgment on the Appellants' state-law negligent supervision claim, holding that because Bartley was not liable to S.L., DelGrande could not be liable either.

S.L. and K.L. now appeal the district court's summary judgment order in favor of Bartley on their § 1983 claims, and its subsequent summary judgment order in favor of DelGrande on their § 1983 and state-law claims.

---

[2]"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).

**II.**

The district court raised sua sponte an Eleventh Amendment defense with regard to DelGrande.  When the merits offer a more straightforward means of resolving a case and the defendants raise sovereign immunity only as an alternative defense on appeal, we have held that it is unnecessary to address a potential Eleventh Amendment defense.  *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006).  When a party "declines to raise sovereign immunity as a threshold defense, we conclude that the federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer." *Ibid.*  In *Nair*, we "bypass[ed]" the state's Eleventh Amendment defense, instead dismissing the case on the merits of the plaintiff's constitutional and statutory claims.  *Ibid.*

We do the same here.  DelGrande first raised sovereign immunity as an alternative defense in this appeal; he did not raise it as a threshold defense on a motion to dismiss.  And ruling that DelGrande is entitled to Eleventh Amendment immunity would not resolve all claims, but addressing the underlying absence of a constitutional violation would.  We therefore decline to address Eleventh Amendment immunity, instead resolving the case on the merits.

**III.**

We review de novo a district court's summary judgment order.  *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To survive a motion for summary judgment, "[a] § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995) (internal quotation marks omitted).

**A.**

The Appellants assert that by taking custody of S.L., Bartley was effectively arresting and detaining him, without probable cause and without a warrant, in violation of S.L.'s Fourth Amendment rights.  And, they argue, because the Fourth Amendment applies to all state actors,

Bartley's "seizure" of S.L. without a warrant and without probable cause gives rise to a cause of action under § 1983.

The Appellants cannot show the deprivation of a constitutional right. It was Homer—not Bartley—who arrested (or seized) S.L. They point to no authority to support the proposition that an alleged constitutional violation by an arresting officer imputes § 1983 liability to each successive officer who takes custody of the arrestee, or that each successive officer independently "seizes" the arrestee within the meaning of the Fourth Amendment. Counsel conceded at oral argument that to his knowledge, no court has ever held that an intake officer such as Bartley who takes custody of an arrestee and facilitates the administrative steps incident to a warrantless arrest violates the Constitution if the arresting officer originally lacked probable cause. In fact, caselaw suggests the contrary.

In *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975), the Supreme Court held that the Fourth Amendment requires a "prompt[]" determination of probable cause after a warrantless arrest and detention. The Court recognized that "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Id.* at 113–14. And in *County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991), the Court reiterated that it had "stopped short of holding that jurisdictions were constitutionally compelled to provide a probable cause hearing immediately upon taking a suspect into custody." It then concluded "that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 56. *Gerstein* and *McLaughlin* establish that an officer's pre-arrest probable cause determination is sufficient legal authority for the detention of an arrestee pending a *judicial* probable cause determination. That determination must take place "promptly," generally within forty-eight hours.

In denying the Appellants' motion for summary judgment, the district court characterized the issue as whether Bartley "had a duty to make an independent assessment of probable cause for S.L.'s arrest and detention." The Appellants insist that because they argue only that probable cause did not exist and thus Bartley violated the Fourth Amendment, Bartley and the district

court "mischaracterize[] the basis of the claims." Reply Br. 2.**[3]** But how could Bartley ensure that S.L.'s arrest was supported by probable cause unless he undertook the independent determination of probable cause that *Gerstein* and *McLaughlin* held was not required? Such a rule would mean that every police officer, corrections officer, and courtroom deputy who takes custody—however briefly—of an arrestee such as S.L. must make this independent assessment or risk § 1983 liability.**[4]** After an initial warrantless seizure, the Fourth Amendment requires only a "prompt[]" *judicial* probable cause determination. Because Bartley did not violate S.L.'s constitutional rights, the district court did not err by granting summary judgment to Bartley on the Appellants' § 1983 claim.

**B.**

The Appellants also seek to impose § 1983 liability on DelGrande "based on municipal or supervisory liability" in his official capacity as the supervisor of the Detention Center. The Appellants premise liability on inadequate training.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). We said in *Barber v. City of Salem*, 953 F.2d 232, 235–36 (6th Cir. 1992), that "a municipality may [] be liable under 42 U.S.C. § 1983 in certain circumstances for constitutional violations arising from its failure to properly train its employees."

> In order for a plaintiff to prevail against a municipality, the plaintiff must show that inadequate training represented a city policy and that the need for better training was so obvious and the inadequacy so likely to result in a violation of constitutional rights, that the municipality can be said to have been deliberately indifferent to the need.

*Id.* at 236. The "policy" prong "requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

---

**[3]**Neither Bartley nor the district court, moreover, mischaracterizes the Appellants' claims. The Appellants argue repeatedly that the Fourth Amendment "require[s] some independent assessment and determination that the arrest and detention is legally justified."

**[4]**And if Bartley were required to make this independent assessment of probable cause, he probably would be exercising *judicial* authority and would be entitled to claim quasi-judicial immunity.

In *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000), we explained that an attempt to impose municipal liability under § 1983 requires an underlying violation of the § 1983 claimant's constitutional rights. *See also Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act."); *Napier*, 238 F.3d at 743 ("Because the analysis concludes that Napier cannot show that he suffered an underlying constitutional violation, his claims against Madison County must also fail."). We concluded in Section III.A, however, that Bartley did not violate S.L.'s constitutional rights. Because no underlying constitutional violation occurred, the district court did not err by granting summary judgment to DelGrande on the Appellants' § 1983 municipal liability claim.

To the extent the Appellants raise a separate supervisory liability claim under § 1983 for a policy of inadequately training subordinates, *O'Banion v. Bowman*, 824 F. Supp. 743, 745 (S.D. Ohio 1993), their claim must fail. "[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). But because Bartley did not violate S.L.'s constitutional rights, supervisory liability does not attach to DelGrande under § 1983.

## IV.

The Appellants also bring a state-law negligent supervision claim against DelGrande. The district court held that "[u]nder Ohio law, where no cause of action may be maintained against the individual employee, a claim against the employer for negligent supervision and negligent training necessarily fails as a matter of law."

In *Strock v. Pressnell*, 527 N.E.2d 1235 (Ohio 1988), the Ohio Supreme Court held that a negligent supervision claim against a church failed because

> an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. Because no action can be maintained against [the minister] in the instant case, it is obvious that any imputed actions against the church are also untenable.

*Id.* at 1244. Bartley is neither "liable for a tort" nor "guilty of a claimed wrong" because he did not violate S.L.'s constitutional rights.[5] Bartley's liability is premised solely on the Appellants' unsuccessful § 1983 claim. Accordingly, the district court did not err by granting summary judgment for DelGrande on the Appellants' state-law negligent supervision claim.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[5]The Appellants contend that *Strock* provides a disjunctive test, and thus an employee need not be "liable" provided the employee is "guilty of a claimed wrong." This argument arises because the district court ordered summary judgment for Bartley on the basis of quasi-judicial immunity and did not reach the merits of the § 1983 claim. Because we resolve the claim against Bartley on the merits, we need not comment on whether the *Strock* test is disjunctive. Bartley is neither "liable" nor "guilty."