**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0238n.06

Case No. 14-3255

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 01, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BUNN ENTERPRISES, INC., *et al*., | ) | |
| | ) | |
| *Plaintiffs-Appellants*, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| *v.* | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| OHIO OPERATING ENGINEERS FRINGE | ) | OHIO |
| BENEFIT PROGRAMS, *et al*., | ) | |
| | ) | |
| *Defendants-Appellees*. | ) | |
| | ) | |

**BEFORE: KEITH, COOK, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** This case presents a dispute over an employer's contributions to a benefits fund for its employees under the terms of a collective bargaining agreement. The agreement requires employer signatories to contribute a certain amount to the fund per "hour paid" to its employees. Plaintiff employer Bunn Enterprises, Inc., asserts that the agreement requires contributions only for hours an employee performs "covered" work under its terms. Defendant fund manager Ohio Operating Engineers Fringe Benefit Programs argues that the agreement requires employers to make contributions for all hours worked by an employee, regardless of whether such work is "covered." Based on case law interpreting the contested provisions of this particular agreement, the district court held that

Bunn Enterprises, Inc., is responsible for payment for all hours worked, without distinction. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

The district court explained the parties' arrangement in its June 19, 2013 opinion and order:

> Plaintiff Bunn Enterprises, Inc. ("Bunn") is an employer under . . . the Employee Retirement Income Security Act ("ERISA"). Bunn is signatory to, among other collective bargaining agreements, the Ohio Heavy Highway Agreement (the "CBA"), with the International Union of Operating Engineers Local 18 and its various branches ("Local 18"). By the terms of the CBA, Bunn Enterprises pays "fringe benefit contributions" for hours worked by its employees into Defendant Ohio Operating Engineers Fringe Benefit Programs (. . . the "Fund"), an ERISA fund for Local 18 members.

*Bunn Enters. Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs (Bunn I)*, No. 2:13–CV–357, 2013 WL 3147956 at *1 (S.D. Ohio Jun. 19, 2013).

The Fund provides employees benefits through the Ohio Operating Engineers Health and Welfare Plan (the "Plan"). Under the Plan, employees become eligible for various health and pension benefits based on complex rules regarding the number of hours they have worked in a specific period of time. These rules also govern whether an employee remains eligible for benefits, so calculations of the hours they have worked are essential to receipt of benefits under the Plan.

In 2012, the Fund conducted an audit of Bunn's payroll records to ensure the company's contributions were up to date. The audit revealed that Bunn had not contributed to the Fund for a significant number of hours performed by certain Bunn employees. The Fund requested payment of the outstanding amount, but Bunn refused, stating that the employees had not performed "covered" work under the CBA during the disputed hours, and therefore were not

entitled to benefits contributions for those hours. Many of these disputed hours were performed by Plaintiff employee Delbert Newlon.

Under the Fund's "oldest outstanding balance policy," when an employer has a deficit in its contribution payments, the Fund will apply whatever money is available toward the deficient employee accounts in chronological order. Thus, the earliest created debt (as defined by the Fund) is paid off first, then the next chronogically, and so on. Accordingly, "the Fund has implemented the Policy to apply all of Bunn's contributions to the alleged Newlon deficiency, irrespective of whether Bunn identified such payments as corresponding to other employee hours. In particular, Bunn's contributions on behalf of [the other individual plaintiffs] have not been credited to those individuals."[1] *Bunn I*, WL 3147956 at \*2. Instead, the Fund sent employees letters explaining that their benefits would be discontinued due to "insufficient employer contributions" and that they had the option of either paying their own way or seeking coverage elsewhere.

Bunn and the impacted employees[2] filed a complaint seeking, inter alia, declaratory judgment that 1) the CBA does not require contributions for all hours worked, but rather only for work "covered" by the agreement and that 2) the Fund may not withhold coverage from the named plaintiffs by crediting "their" contributions to the Newlon deficiency. They also sued Local 18 for tortious interference with contract, claiming that the union had influenced the Fund's audit process. The Fund moved for summary judgment on the ground that the CBA requires fringe benefit contributions for all hours worked, regardless of whether the work is "covered" under the CBA. Local 18 moved for judgment on the pleadings, arguing that, because

---

[1]The district court's order of June 19, 2013 contains a detailed account of how the Fund's policy offset payments for each plaintiff. *Bunn I*, WL 3147956 at \*2-4.

[2]In addition to Bunn Enterprises, Inc., Kevin Bunn (owner) brought suit as an individual, as did Bunn employees Delbert Newlon, Daniel Lantz, Mark Morgan, Michael Shau, and David Welch.

the Fund properly interpreted the CBA, there was no breach of contract. The district court ruled in favor of Defendants, granting summary judgment and judgment on the pleadings, respectively, and dismissed Plaintiffs' claims. Plaintiffs now appeal.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's order granting summary judgment. *S.L. ex rel. K.L. v. Pierce Tp. Bd. of Trustees*, 771 F.3d 956, 961 (6th Cir. 2014) (citing *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005)). Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing such a grant, we view all evidence and draw all inferences in the light most favorable to the nonmoving party." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citing *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).). "However, 'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)) (emphasis in original). "A genuine issue of material fact exists where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id*. (quoting *Anderson*, 477 U.S. at 249).

### B. Language of the CBA

All parties agree that the dispositive issue regarding their respective claims is whether the CBA requires employer signatories to make benefit contributions for only "covered" hours

worked by employees under the agreement, or for all hours worked by employees under the agreement.

Article I of the CBA sets out the "Geographical and Industrial Scope of [the] Agreement[,]" and Sections 1 and 2 state that

> The provisions of this Agreement shall govern the employment of and conditions under which employees shall work and rates of pay they shall receive on work as defined herein for all counties of the State of Ohio except Columbiana, Mahoning, and Trumbull, and including Boone, Campbell, Kenton, and Pendleton counties in Kentucky. . . . The word "work" when used herein means "Highway Construction, Airport Construction, Heavy Construction, [etc.]" as hereinafter defined within the jurisdiction.

Article I, § 2(A) through (I) then define the types of work each category of construction includes. Article II adds that

> All [employer signatories to this agreement] . . . shall be bound to make Health and Welfare payments, Pension payments, [and other] payments required under Article V **for all work performed within the work jurisdiction outlined in Article I of this Agreement**, or any other payment established by the appropriate Agreement.

Article V specifically addresses "Fringe Benefit Programs" and sets out related employer requirements under the CBA. Section 35 states: "Fringe benefit contributions shall be paid at the following rates **for all hours paid to each employee by the Employer under this Agreement** which shall in no way be considered or used in the determination of overtime pay. Hours paid shall include holidays and reporting hours which are paid."

**C. Context**

As discussed, Plaintiffs argue that the CBA's language requires us to draw a distinction between work covered by the agreement and work that falls outside its ambit with regards to benefits contributions. They state that the district court failed to recognize this distinction

- 5 -

because it read Article V § 35 "in a vacuum" rather than considering it in the context of the rest of the agreement: "Common sense dictates that an employer will only pay employees 'under this Agreement' when the employees perform the type of work expressly outlined in Article I of the CBA." Article II requires employers to make benefits contributions "for all work performed within the work jurisdiction outlined in Article I[.]" In their view, because Article I defines "work" as various construction activities, only those construction activities are "covered" work to which the contract's other provisions apply.

This is a convoluted reading of the contract's plain language. Article II refers to the geographical "work jurisdiction" separately from the industrial categories of work outlined in Article I. For example, Article II, § 4 requires "The Employer [to] employ Operating Engineers for the erection, operation, assembly and disassembly, and maintenance and repair of [the listed construction equipment] within the jurisdiction[,]" and requires "[e]stablishment of, transferring of, all original lines and grades . . . appertaining to the work scope outlined in the Highway Heavy Agreement, [to] be performed exclusively by Field Survey Crews." Such passages of the contract would be redundant and confusing under Plaintiffs' interpretation, but make perfect sense if "jurisdiction" means the named counties to which the CBA applies.

Article V sets out the details regarding payment of benefits contributions. This section explicitly requires such contributions to be made "for all hours paid to each employee by the Employer under this Agreement[.]" Had the drafters wanted to limit benefits contributions solely to "covered" work hours, they could have stated as much, either plainly or through reference to the specific sections of Article I. They did neither. Furthermore, under the terms of Article V, contributions must be made even for hours paid to employees for "holidays and reporting hours[,]" during which it is understood they will not be working at all. It would be

nonsensical to read the contract as requiring benefits to be paid for those non-working hours and then to infer from the same language that no contributions are required for hours spent performing work designated "non-covered."

Other aspects of the agreement also counsel against adopting Plaintiffs' interpretation. The concept of "covered" work does not appear in any of the CBA provisions highlighted *supra* in Section II.B. Nor is "covered/not-covered" a distinction present in the CBA's provisions regarding holiday pay. The concept is also absent from Exhibits A and D, which provide detailed wage classifications, rates of pay, and benefit contribution amounts for employees in different work categories. Thus, the only language in the CBA that even potentially contemplates the "covered/non-covered" distinction would be implied from the definition of "work" in Article I. As we have discussed, however, to adopt Plaintiffs' reading of that definition would require us to ignore not only the remaining text of the agreement itself, but also the law and policy arguments supporting Defendants' interpretation.

### D. Jurisprudence

Plaintiffs rely heavily on a case we decided in 1994 to support their interpretation of the CBA. In *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, a panel of this Court considered another ERISA agreement dispute. 30 F.3d 692, 697 (6th Cir. 1994). The employer, Grimaldi, failed to make payments to the ERISA fund for hours worked by some of its employees. *Id*. at 693-94. The ERISA fund manager attempted to audit Grimaldi's payroll records, but found them so vague and incomplete that it was impossible to determine which hours had been performed pursuant to the agreement. *Id*. at 694. The fund manager therefore demanded contributions for all hours the employees had worked, and the parties proceeded to suit. *Id*. We held that, because Grimaldi was required to maintain accurate records under

ERISA, the company's failure to do so meant "[t]he burden thus shifted to Grimaldi to prove what work was covered and what work was not covered" under the agreement. *Id.* at 696. Accordingly, Plaintiffs claim, we have recognized a distinction between "covered" and "not-covered" work as essential to determining what contributions must be made under a collective bargaining agreement, and therefore must continue to recognize that distinction here.

Plaintiffs' reading of *Grimaldi* is problematic. The agreement at issue in that case was different from the CBA here; it had different language, requirements, and limitations. More importantly, the parties in *Grimaldi* stipulated at the outset that the only contributions in dispute were those related to "covered work" under the agreement. (*Id.* at 694.) The issue before the court was not, therefore, interpretation of the parties' rights under the agreement, but whether Grimaldi had effectively forfeited an undisputed right to pay solely for "covered" work by failing to keep adequate records. (*Id.* at 694-96.) The distinction between "covered" and "not-covered" work was not before the court—or even contested by the parties—in *Grimaldi*. Here, the distinction (or lack thereof) is the central issue.[3]

Plaintiffs insist that their interpretation of *Grimaldi* is controlling even in the face of 22 years of district court precedent that interprets the same CBA regarding the same issue—and does so in Defendants' favor. As discussed in its March 14, 2014 opinion, the District Court for the Southern District of Ohio has unanimously held that employer signatories of the Ohio Heavy

---

[3]Plaintiffs cite a number of other cases they claim support their interpretation of the CBA, but each is inapposite. One case features an agreement interpreted in a manner similar to Plaintiffs' interpretation of the CBA here, but the case is from another jurisdiction and deals with a different agreement. *See Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co.*, 695 F.3d 1, 8 (1st Cir. 2012), *rev'd* on other grounds, 134 S. Ct. 773 (2014), *remanded* to 745 F.3d 1 (1st Cir. 2014). Plaintiffs also cite cases from within the Sixth Circuit which incorporate *Grimaldi*'s holding, but which do not present the issue at bar. *See, e.g.*, *Plumbers Local 98 Defined Benefit Pension Fund v. M & P Master Plumbers of Mich., Inc.*, 608 F. Supp. 2d 873, 881 (E.D. Mich. 2009) ("Under Sixth Circuit precedent, where an ERISA fund plaintiff has provided proof of an employer's failure to pay fringe benefit contributions on behalf of its employees for work covered by a collective bargaining agreement, the burden shifts to the employer to produce evidence as to what work is not covered." (citing *Grimaldi*, 30 F.3d at 696-97)).

Highway Agreement are required to pay contributions for all hours worked, regardless of whether the hours are "covered" under the CBA. *Bunn Enters. Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs (Bunn II)*, 7 F.Supp.3d 752, 756-58 (S.D. Ohio 2014) (discussing *Noe v. R.D. Jones, Excavating, Inc.*, 787 F.Supp. 759, 764-65 (S.D. Ohio 1992); *Orrand v. Maint. Unlimited, Inc.*, No. 2:96-CV-00766, Doc. 17 at 4-5 (S.D. Ohio Feb. 24, 1998); *Orrand v. Shope*, No. C2-00-1161, 2001 WL 1763437, at *3 (S.D. Ohio Jan. 30, 2001); *Orrand v. Keim Concrete Pumping, Inc.*, No. 2:08-CV-1046, 2010 WL 3447647, at *16 (S.D. Ohio Aug. 30, 2010)). As the court explained in its initial case dealing with this issue,

> ERISA dictates a resolution that provides for the simplification of collection procedures for the trustees of fringe benefit funds in order to protect the funds from unnecessary collection costs. . . . Determining the amount of an employer's obligation based upon the total hours worked by an employee covered under a collective bargaining agreement is consistent with this policy concern given that the amount of the contribution obligation can easily be determined by simply examining the employer's payroll records. . . . Therefore, the Defendant is obligated to contribute to the Fringe Benefit Funds based upon all the hours worked by the employees, no matter the totality of their assignments.

*Noe*, 787 F. Supp. at 765.

Plaintiffs highlight that *Noe* was decided before *Grimaldi*, but *Noe*'s holding has been applied repeatedly since *Grimaldi* was decided in 1994, to no *sturm und drang*. In 2001, the court again explained the policy supporting its position:

> If an employer were entitled to receive a reduction in the amount of benefits paid based upon hours spent in non-covered work, and it were the sole arbiter of what type of work was performed and its records were the only source of that information, it would be exceedingly difficult for a fund to dispute an employer's allocation of hours between covered and non-covered work, and it would therefore be possible for an employer to skew its records in such a way as to minimize its contributions. By providing that benefits are due for all hours worked and paid, whether for covered or non-

> covered work, the ability to manipulate the facts is reduced or eliminated, and the audit process is much simpler.

*Shope*, 2001 WL 1763437, at \*2. The district court added, "Of course, these benefits would not permit the Court to rewrite the parties' agreement, but the language in this agreement appears unambiguously to obligate the employer to make contributions for all hours paid." *Id.* This last observation is the key reason Plaintiffs' arguments regarding interpretation of the CBA fail: the language of the CBA, as we have discussed, is not ambiguous. And as the district court noted, "Plaintiffs have offered no arguments which [the court] has not already considered and rejected in the last 22 years." *Bunn II*, 7 F.Supp.3d at 757. We agree. Accordingly, we find that the CBA unambiguously requires employer signatories to contribute the appropriate benefits contributions for all hours worked by their employees, regardless of whether those hours are "covered" under the contract. The district court did not err in granting Defendants' motions for summary judgment and judgment on the pleadings.

### III. CONCLUSION

Based on the foregoing analysis, we AFFIRM the district court's disposition of this case.