NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0083n.06

No. 20-3171

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CAROL A. WILSON, Administrator of Ohio )
Operating Engineers Health and Welfare Plan, )
Ohio Operating Engineers Pension Fund, Ohio )
Operating Engineers Apprenticeship and )
Training Fund, and Ohio Operating Engineers )
Education and Safety Fund et al., )
                                     )
     **Plaintiffs-Appellees,** )
                                     )
v. )
                                     )
DM EXCAVATING, LLC, )
                                     )
     **Defendant-Appellant.** )
                                     )

**FILED**
Feb 09, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

**OPINION**

Before: MOORE, ROGERS, and READLER, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Carol A. Wilson, Administrator, and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Apprenticeship and Training Fund, and the Ohio Operating Engineers Education and Safety Fund filed a suit against employer DM Excavating, LLC under the Employee Retirement Income Security Act ("ERISA") to recover unpaid benefit contributions as required by the collective bargaining agreement ("CBA"). The district court entered summary judgment in favor of the Funds because the CBA required the company to contribute to the Funds based on all hours worked by its employees and because DM Excavating

failed to show that the work fell outside of the scope of the CBA. For the reasons set forth in this opinion, we **AFFIRM** the district court's entry of summary judgment in favor of the Funds.

## I. BACKGROUND

Plaintiffs-Appellees are the Administrator and Trustees of Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Apprenticeship and Training Fund, and the Ohio Operating Engineers Education and Safety Fund (the "Funds"). The Funds are jointly administered, multiemployer fringe benefit programs that provide benefits to members of the International Union of Operating Engineers, Local Nos. 18, 18A, and 18B (the "Union"). Defendant-Appellant is DM Excavating, LLC, a company that performs construction and maintenance work connected to distribution pipelines.

On March 28, 2017, DM Excavating executed the "Distribution and Maintenance Agreement" with the Union. R. 1-1 (CBA Signature Page at 2) (Page ID #11). As part of its agreement, DM Excavating was required to comply with the Union's CBA. The CBA stated that "Fringe Benefits shall be paid [by the employer] on all hours paid." R. 20-1 (CBA at 19) (Page ID #142). The terms of the CBA "apply to and cover all distribution pipeline construction and maintenance work coming within the jurisdiction of the Union, contracted for or performed by the Employer within those counties of Ohio and Kentucky which are in the jurisdiction of the Union." *Id.* at 3 (Page ID #134). The geographic jurisdiction encompasses eighty-five counties in Ohio (i.e., all counties in Ohio except Columbiana, Mahoning, and Trumbull Counties) and four counties in Kentucky, *id.* at 16 (Page ID #141), and the craft jurisdiction includes "all distribution pipeline construction and maintenance work," *id.* at 3 (Page ID #134). To monitor compliance with employers' obligations to the Funds, the CBA provides "that duly authorized representatives

2

of any of said Trust Funds or Plan shall have the right, on written notice, to audit during regular work hours, the books and records of any party obligated under this Agreement to contribute thereto, with respect to the hours worked by and wages paid to all Employees upon whom the Employer is obligated to make contributions." *Id.* at 19–20 (Page ID #142–43).

On December 26, 2018, the Funds and their Administrator filed a complaint under 29 U.S.C. §§ 1132(a)(3), 1145 to enforce their ability to audit DM Excavating's books and records and to obtain delinquent contributions, interest on the delinquent contributions, late fees for the delinquent contributions, the cost of collecting the delinquent contributions, including attorney fees, and injunctive relief. R. 1 (Compl. at 6–9) (Page ID #6–9). The district court entered an order requiring that DM Excavating comply with the Funds' request for documents. R. 14 (Order) (Page ID #61). DM Excavating produced its payroll records. R. 18-1 (Resp. to Pls.' First Reqs. for Prod. of Docs.) (Page ID #93–115). Critically, none of the records produced by DM Excavating identified the location of the work performed by its employees. *Id.* at 4–11 (Page ID #96–103). The audit revealed that DM Excavating had not been making contributions to the Funds for three of its employees, David McElrath (the owner of DM Excavating), Brad Doan, and Joel McElrath. R. 20-1 (Carolyn Wilson Aff. ¶ 6) (Page ID #130); R. 20-2 (Audit Report at 8–13) (Page ID #153–58). Using DM Excavating's payroll data, the auditor calculated that DM Excavating owed the Funds $199,260.96 in delinquent contributions, along with interest and late charges. R. 20-2 (Audit Rep. at 1) (Page ID #147).

After completing the audit, the Funds filed a motion for summary judgment seeking the delinquent contributions, interest, and late charges. R. 20 (Mot. for Summ. J.) (Page ID #118–27). The district court granted the Funds' motion for summary judgment. *Wilson v. DM Excavating,*

3

*LLC*, No. 2:18-cv-1779, 2020 WL 247374 (S.D. Ohio Jan. 16, 2020). First, the district court interpreted the CBA's requirement that the employer contribute to the Funds based on "all hours paid" to include work within and outside the listed counties. *Id.* at *6. The district court relied on an unpublished case from this circuit, *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, 606 F. App'x 798 (6th Cir. 2015), in which we interpreted similar language to require payment of fringe benefit contributions based on all work regardless of whether it was within the craft jurisdiction. *DM Excavating, LLC*, 2020 WL 247374, at *6.

In the alternative, the district court applied a burden-shifting framework in which an employer bears the burden of showing that the work performed was not covered by the CBA when it fails to maintain adequate records. *Id.* We adopted this burden-shifting framework in the craft jurisdiction context. *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695–96 (6th Cir. 1994). The only evidence that DM Excavating presented was an affidavit stating that the employees performed work "nearly exclusively" outside of the geographic jurisdiction of the Union. R. 21-2 (Sabrina Urick Aff. ¶ 2) (Page ID #177). The district court concluded this was not sufficient to meet its burden. 2020 WL 247374, at *6. Although DM Excavating offered evidence that it made payments to another union, Local 66, the district court concluded that this did not absolve DM Excavating of its obligations to the Funds. *Id.* at *4.

DM Excavating appeals the district court's judgment as to Brad Doan and Joel McElrath.[1] R. 26 (Notice of Appeal) (Page ID #284–85).

---

[1]In response to the Funds' motion for summary judgment, DM Excavating argued that it was not required to make contributions to the Funds on behalf of David McElrath because he was the owner of the company. R. 21 (Resp. to Mot. for Summ. J. at 3) (Page ID #162). The district court concluded that DM Excavating was still required to make contributions to the Funds on behalf of its owner. *DM Excavating, LLC*, 2020 WL 247374, at *3. On appeal, DM Excavating

## II. ANALYSIS

On appeal, DM Excavating argues that the district court erred by concluding that DM Excavating was required to make contributions to the Funds based on all hours worked by its employees. Appellant's Br. at 10–11. Further, even if it is required to make contributions based on all hours worked by its employees, DM Excavating contends that the district court should have offset the contribution by the amount it paid to Local 66.[2] *Id.* at 11–12.

"We review the grant of summary judgment de novo." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When deciding a motion for summary judgment, we do not engage in 'jury functions' such as making credibility determinations and weighing the evidence. If there remain any material factual disagreements as to a particular legal claim, that claim must be submitted to a jury." *Youkhanna*, 934 F.3d at 515 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

---

concedes that it was required to make contributions on behalf of David McElrath and therefore does not appeal the district court's judgment as to him. Appellant's Br. at 7.

[2]DM Excavating also argues that the legal maxim "De Minimis Non Curat Lex," which is Latin for "[t]he law does not concern itself with trifles," De Minimis Non Curat Lex, Black's Law Dictionary (11th ed. 2019), applies to this case. Appellant's Br. at 13. Specifically, DM Excavating argues that the principle creates a "genuine issue of material fact . . . as to whether the magistrate judge ought to have simply ignored or disregarded the quantum of work performed by Doan and J. McElrath, within the geographic scope of the CBA coverage as 'de minimus' or 'trifling.'" Appellant's Br. at 13. DM Excavating did not preserve this argument because it failed to raise it in its response to the Funds' motion for summary judgment. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

As the district court correctly notes, we have held that "standing alone, an award of benefits causing an employer to double pay 'would not be sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA funds.'" *Orrand v. Hunt Constr. Grp., Inc.*, 852 F.3d 592, 595 (6th Cir. 2017) (quoting *Trs. of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 F. App'x 188, 196–97 (6th Cir. 2002)). DM Excavating's payments to Local 66 do not absolve the company of its obligations to the Funds.[3] DM Excavating remains liable for fringe benefit contributions for "all hours paid."

DM Excavating argues that we should follow the approach taken in *Michigan Glass & Glazing Industry Defined Contribution Pension Plan v. CAM Glass, Inc.*, No. 06-12917, 2008 WL 506350, at *14–15 (E.D. Mich. Feb. 22, 2008), in which the district court interpreted a CBA that required that the employer contribute to the pension plan for all hours worked by the covered employees to include only hours worked within the geographic jurisdiction. Appellant's Br. at 9. In another case cited by the district court, *Cement Masons' Pension Tr. Fund-Detroit & Vicinity v. M&B Concrete, Inc.*, No. 03-cv-70839-DT, 2006 WL 454595, at *2 (E.D. Mich. Feb. 6, 2006), the parties do not appear to have contested that the CBA required the company to pay contributions only for work within its geographic jurisdiction.

---

[3]At the district court level, the Funds argued that the district court should not consider the two checks to Local 66 because DM Excavating produced them after the close of discovery and after confirming that it had previously produced all the records in its possession for the audit. R. 22 (Reply Mem. at 4–5 n.1) (Page ID #185–84). The district court correctly concluded that it did not need to resolve this discovery dispute because it would not change the outcome. *DM Excavating, LLC*, 2020 WL 247374, at *4 n.4. We observe that the two checks do not reveal the names of the affected employees and that one check on its face covers a period different from the one at issue here.

As the district court notes here, both of the above-cited district court decisions predate *Bunn Enterprises*, in which we interpreted language in another CBA to "unambiguously require[] employer signatories to contribute the appropriate benefits contributions for all hours worked by their employees, regardless of whether those hours are 'covered' under the contract." 606 F. App'x at 804. The CBA in *Bunn Enterprises* stated that:

> All [employer signatories to this agreement] . . . shall be bound to make Health and Welfare payments, Pension payments, [and other] payments required under Article V *for all work performed within the work jurisdiction outlined in Article I of this Agreement*, or any other payment established by the appropriate Agreement.

*Id.* at 801. Article V stated that "[f]ringe benefit contributions shall be paid at the following rates for all hours paid to each employee by the Employer under this Agreement which shall in no way be considered or used in the determination of overtime pay. Hours paid shall include holidays and reporting hours which are paid." *Id.* In Article I, under a section entitled "Geographical and Industrial Scope of Agreement," the CBA provided that:

> The provisions of this Agreement shall govern the employment of and conditions under which employees shall work and rates of pay they shall receive on work as defined herein for all counties of the State of Ohio except Columbiana, Mahoning, and Trumbull, and including Boone, Campbell, Kenton, and Pendleton counties in Kentucky . . . . The word "work" when used herein means "Highway Construction, Airport Construction, Heavy Construction, [etc.]" as hereinafter defined within the jurisdiction.

*Id.*

The panel in *Bunn Enterprises* interpreted the CBA to require the employer to pay benefits for hours spent performing non-covered work. District courts within this circuit have applied *Bunn Enterprises* to hold that employers must contribute to fringe benefits funds for all hours worked. *Wilson v. A&K Rock Drilling, Inc.*, No. 2:16-CV-739, 2018 WL 527375, at *4 (S.D. Ohio Jan. 24, 2018); *Wilson v. Bridge Overlay Sys., Inc.*, 129 F. Supp. 3d 560, 576 (S.D. Ohio 2015).

7

Here, the CBA's only reference to fringe benefit contributions is the requirement in Article XII that "Fringe Benefits shall be paid on all hours paid." R. 20-1 (CBA at 19) (Page ID #142). We need not decide whether the CBA in the present case requires DM Excavating to pay fringe benefit contributions for all work performed by its employees regardless of the geographic location of the employees' work, because DM Excavating has not met its burden to keep adequate records of where the work was performed.

We apply the burden-shifting framework from *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692 (6th Cir. 1994), in which we held in the craft jurisdiction context that once the funds produce evidence that the employer is not making contributions to the funds as required by its CBA, the burden shifts to the employer to produce records showing that the work performed was not within the union's craft jurisdiction. The funds alleged that the companies, Grimaldi Concrete, Inc. and Rocco's Concrete Company, were not paying fringe benefit contributions as required by the CBA. In response to the funds' request to audit the companies' records, the companies produced the payroll receipts for 19.4 percent of the total work during the audit period. *Id.* at 694. These receipts showed a total of 346,626.32 square feet of concrete work, of which 39,034.32 square feet of concrete work fell within the CBA's craft jurisdiction. *Id.* The companies did not provide information regarding which of its employees worked on the covered projects or the number of hours its employees worked on the covered projects. *Id.* Nor did the company keep receipts for the outstanding 80.6 percent of work performed during the audit period. *Id.* Unlike in the present case, however, the parties in *Grimaldi* stipulated that the CBA did not require the companies to make contributions for work outside the CBA's craft jurisdiction. *Id.* The auditors concluded that the companies were required to make

8

fringe benefit contributions for all hours their employees worked, because the companies had not provided receipts to show the exact number of hours worked on craft and non-craft jurisdiction projects. *Id.* The district court agreed with the auditors. *Id.* at 694–95.

On appeal, we concluded that the companies were liable for the fringe benefit contributions, even if the work was ultimately not within the craft jurisdiction of the union, because the employer had not kept adequate records. We began by concluding that the companies had violated 29 U.S.C. § 1059 by failing to maintain adequate records. *Id.* at 695. "Grimaldi Concrete provided no records at all with respect to 80% of the work performed under the collective bargaining agreement, and provided incomplete records with respect to the remaining 20%." *Id.* at 696.

We then adopted a burden-shifting framework under which "an employer's failure to maintain adequate records shifts the burden to the employer to prove that the work performed was covered or not covered." *Id.* The framework follows from the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946),[4] in which the Court applied a burden-shifting approach to evaluating alleged violations of the Fair Labor Standards Act ("FLSA"). In *Mt. Clemens Pottery*, employees of a pottery plant sued under the FLSA § 16(b) alleging that their employer had not paid wages and overtime compensation. *Id.* at 684. The Supreme Court began by holding that the employees have the burden of showing that they performed work for which their employer had not compensated them. *Id.* at 686–87. But, once the employees have met this

---

[4]Although *Mt. Clemens Pottery* was superseded by statute as to its definition of the statutory work week, *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014), the burden-shifting framework remains good law.

burden, the burden shifts to the employer to produce evidence showing the amount of work performed or rebutting the evidence presented by the employees to avoid damages. *Id.* at 687. This approach reflects "that it is the employer who has the duty . . . to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." *Id.* The Ninth Circuit and Eleventh Circuit have adopted this burden-shifting framework to disputes over whether the work is within the craft jurisdiction. *Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988); *Combs v. King*, 764 F.2d 818, 827 (11th Cir. 1985). In *Grimaldi*, "[w]e agree[d] with this sensible approach." *Grimaldi*, 30 F.3d at 696.

The same concerns that animated our decision in *Grimaldi* and the Supreme Court's decision in *Mt. Clemens Pottery* are present in this case. DM Excavating had a duty under 29 U.S.C. § 1059 to keep proper records of the conditions of its employment, including the locations where its employees worked. As an employer, it is in a better position than the Funds to know where its employees performed the hours worked. We see no distinction between craft jurisdiction and geographic jurisdiction for the purposes of the burden-shifting framework.

Under the burden-shifting framework, DM Excavating is liable for fringe benefit contributions for all hours worked by its employees over the period covered by the audit. After conducting an audit of the records produced by DM Excavating, the Funds determined that DM Excavating was obligated to pay $199,260.96 in delinquent contributions. The burden then turned to DM Excavating to produce evidence showing the number of hours worked within and outside the geographic jurisdiction of the Union. DM Excavating did not meet this obligation. DM

Excavating did not produce any records that identified the location of the work performed by its employees. Instead, DM Excavating maintains in an affidavit in response to the Funds' motion for summary judgment that over the audit period, "[d]efendant's employees, Brad Doan and Joel McElrath, performed distribution pipeline construction and maintenance work nearly exclusively in Mahoning and Trumbull Counties, Ohio," which are outside the geographic jurisdiction of the Union. R. 21-2 (Sabrina Urick Aff. ¶ 2) (Page ID #177). DM Excavating's affidavit also stated that the "[d]efendant made full fringe benefit contributions to Plaintiffs." *Id.* ¶ 3. Aside from the affidavit, the only other evidence that DM Excavating provided was two cancelled checks that it alleged were evidence that it made fringe benefit contribution payments to Local 66, another union that operates in Mahoning and Trumbull Counties. *Id.* at 4–5 (Page ID #180–81). But this late produced evidence does not satisfy DM Excavating's burden to show the hours that Doan and Joel McElrath allegedly worked outside the geographic jurisdiction covered by the CBA. Because DM Excavating failed to meet its burden to provide records showing that its employees' work was outside the geographic jurisdiction of the union, it is required to make the fringe benefit contribution payments, interest, and liquidated damages as calculated by the district court.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's entry of summary judgment in favor of the Funds.